**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| FOOT LOCKER RETAIL, INC., AS SUCCESSOR IN INTEREST TO EASTBAY, INC.; | § § § § | |
| *Plaintiff* | § | |
| | § | |
| -vs- | § | SA-21-CV-00564-XR |
| | § | |
| JOHN R. CARDENAS, TEXAS SPORTS & ENTERTAINMENT LLC, SHOWCASE ATHLETICS PLLC, | § § § | |
| *Defendants* | § | |

## <u>ORDER ON MOTION FOR DEFAULT JUDGMENT</u>

On this date, the Court considered Plaintiff's Motion for Default Judgment against Defendants John R. Cardenas, Texas Sports & Entertainment LLC, and Showcase Athletics PLLC. ECF No. 23. After careful consideration, Plaintiff's Motion is **GRANTED.**

## BACKGROUND

Plaintiff Foot Locker Retail, Inc., as successor in interest to Eastbay, Inc. ("Eastbay"), filed a complaint against Defendants John Cardenas ("Cardenas"), Texas Sports & Entertainment, LLC ("TSE"), and Showcase Athletics PLLC ("Showcase"), alleging breach of contract against TSE and Showcase, breach of contract on personal guaranty against Cardenas, and suit on an open account and on an account stated against all Defendants. *See* ECF No. 5. Plaintiff alleges that all events arose from Defendants' failure to satisfy a debt due, and that Defendants owe Plaintiff $488,149.47. *Id.*

In or around July 2020, Eastbay merged with Foot Locker Retail, Inc. ("Footlocker), a sportswear and footwear retailer, who is now the successor in interest to Eastbay and has all rights, title, and interest in the claims of Eastbay. *Id* at 2. Eastbay sold, and through Foot Locker continues to sell, athletic footwear, apparel, equipment, and private-label merchandise via mail and e-

commerce orders. *Id.* at 3. As successor in interest to Eastbay, Foot Locker is the proper party to bring suit. *Id*. at 5. Showcase and TSE are Texas-based companies that outfit athletes with sporting equipment and organize sporting events. *Id.*

On or around May 28, 2020, Eastbay's business relationship with Showcase began when Cardenas, on behalf of Showcase, signed an application for credit, Business Customer Profile, and Personal Guaranty form with Eastbay for the purpose of ordering sports goods and equipment from Eastbay. *See* ECF. No. 5-1. Shortly thereafter, Eastbay delivered the sporting goods and equipment, along with invoices for the goods. ECF No. 5 at 4.

On September 3, 2020, Cardenas again signed an application for credit, Business Customer Profile, and Personal Guaranty form submitted to Eastbay, this time on behalf of TSE. *See* ECF No. 5-2. TSE then proceeded to order sporting goods from Eastbay, which Eastbay delivered along with invoices for the goods. ECF No. 5 at 4.

To date, Eastbay alleges that it timely and properly delivered $32,544.54 worth of sporting goods to Showcase, and $455,604.93 worth of sporting goods to TSE. *Id.* Eastbay alleges that Cardenas was an authorized purchaser and personal guarantor for both companies and "agree[d] to make all payments to Eastbay in the same manner as if he were the principal of the Agreement[s]." *Id.* Payments for the sporting goods delivered by Eastbay to both TSE and Showcase were due within 30 days of purchase. *Id.* at 5. Plaintiff alleges it has sent multiple invoices to each company for past due payments and neither company nor Cardenas has objected to any of the invoices for the goods delivered. *Id.*

On June 14, 2021, Plaintiff filed this action, asserting various causes of action against Defendants in connection with the outstanding invoices and seeking damages in the amount of $488,149.47. *See* ECF No. 1. Summonses were issued, and Plaintiff filed affidavits of service

indicating that TSE and Showcase were duly served through their registered agents on July 26, 2021. *See* ECF Nos. 19. 20. Defendants TSE and Showcase were thus required to file written answers or otherwise responsive pleadings by August 16, 2021. *See id.* Plaintiff effectuated service on Defendant Cardenas on July 30, 2021, by leaving a copy of the summons and complaint with Cardenas's wife at his usual place of abode, located at 9715 Silver Moon in San Antonio, Texas, and sending an additional copy of the summons and complaint to the same address. *See* ECF No. 18. Accordingly, Defendant Cardenas was required to file written answers or otherwise responsive pleadings by August 20, 2021. *See id.*

Defendants have failed to file an answer or other responsive pleading, request an extension of time in which to do so, or otherwise appear in this action, and the time in which to do so has expired. Plaintiff moved for entry of default and default judgment against all Defendants on September 24, 2021, ECF No. 23, and the clerk entered default Defendants on the same date, ECF No. 24. Defendants have not responded to Plaintiff's motion for default judgment, which the Court now considers.

## DISCUSSION

### I.    Legal Standard

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After a default has been entered and the defendant fails to appear or move to set aside the default, the court may, on the plaintiff's motion, enter a default judgment. FED. R. CIV. P. 55(b)(2). However, in considering any motion for default judgment, a court must examine jurisdiction, liability, and damages. *Rabin v. McClain*, 881 F. Supp. 2d 758, 763 (W.D. Tex. 2012). The Court examines each in turn.

3

## II.    Analysis

### A.    Jurisdiction

"[W]hen entry of default is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Turnakovskiy*, 242 F.3d 322, 324 (5th Cir. 2001). Under 28 U.S.C § 1332(a)(1), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." For diversity jurisdiction to be proper, the "court must be certain that all plaintiffs have a different citizenship from all defendants." *Getty Oil Corp., a Div. of Texaco, Inc. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1258 (5th Cir. 1988). The party asserting federal jurisdiction must "distinctly and affirmatively allege" the citizenship of the parties. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

A corporation is a citizen of its state(s) of incorporation and of the state in which its principal place of business is located, as determined by the "nerve center" test. 28 U.S.C. § 1332(c)(1); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005); *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). For individuals, "citizenship has the same meaning as domicile," and "the place of residence is prima facie the domicile." *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954). The citizenship of an LLC depends on the citizenship of all its members. *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 314 (5th Cir. 2019); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). "A party seeking to establish diversity jurisdiction must specifically allege the citizenship of every member of every LLC or partnership involved in a litigation." *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017). If the members or partners are themselves partnerships, LLCs, or corporations, their

citizenship must be alleged in accordance with the rules of that entity, and the citizenship must be traced through however many layers of members or partners there may be. *Muslow Land & Timber, Inc v. Chesapeake Exploration Ltd. P'ship*, No. 09-cv-0211, 2009 WL 367729 (W.D. La. Feb. 11, 2009).

Plaintiff Foot Locker is a New York corporation with a principal place of business in New York City, New York, and is thus a citizen of New York. ECF No. 5 at 2. Defendant Cardenas is an individual residing in San Antonio, Texas and a citizen of Texas. *Id.* TSE and Showcase are both limited liability companies. The sole member of Showcase is TSE, and the sole member of TSE is Cardenas, a citizen of Texas. *Id.* at 2–3. Thus, both TSE and Showcase are citizens of Texas. Accordingly, diversity of citizenship exists among the parties. The amount in controversy is $488,149.47, exceeding the minimum amount in controversy amount required for a district court to have original jurisdiction over a diversity case. ECF Nos. 5, 23. Thus, the Court concludes that Plaintiff has provided a sufficient basis for subject-matter jurisdiction.

The Court has personal jurisdiction over Defendants as citizens of Texas. It appears that all Defendants have been properly served. Defendants Showcase and TSE were served through their registered agent. *See* ECF Nos. 19, 20; FED. R. CIV. P. 4(h)(1)(B). Plaintiff served Defendant Cardenas by leaving the summons and amended complaint with his wife at their residence and mailing a copy of the summons and complaint to the same address. See ECF No. 18; FED. R. CIV. P. 4(e)(2)(B) (An individual defendant may be served by leaving service documents at the defendant's "dwelling or usual place of abode with someone of suitable age and discretion who resides there[.]").

### B.    Liability

"The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Although the Court must accept the plaintiff's well-pleaded facts as true, a defendant's default does not warrant the entry of default judgment before the Court finds a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr.*, 515 F.2d at 1206 ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."); *see also* 10A Wright & Miller *et al.*, FED. PRAC. & PROC. CIV. § 2688 (3d ed. 2002) ("Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."). Thus, prior to a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). In determining whether the pleadings present a sufficient basis for Plaintiff's claim for relief, "the Fifth Circuit has looked to the Rule 8 case law for guidance[.]" *J&J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 815 (N.D. Tex. 2015).

Plaintiff asserts claims for (1) breach of contract against TSE and Showcase, (2) breach of contract on personal guaranty against Cardenas, (3) suit on an open account against all Defendants, and (4) suit on an account stated against all Defendants. The Court finds Plaintiffs have adequately alleged claims for breach of contract against TSE, Showcase, and Cardenas, which entitles Plaintiffs to their full recovery sought, so the Court considers only the first two claims.

### 1.   *Breach of Contract Against TSE and Showcase*

Plaintiff alleges Defendants TSE and Showcase breached their respective contracts with Eastbay. ECF No. 5. Under Texas law, for a plaintiff to prevail on the breach of contract claim, it must show (1) the existence of a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by defendant; and (4) damages to the plaintiff resulting from that breach. *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

Here, Plaintiff sufficiently allege the existence of valid contracts with TSE and Showcase. A valid contract is formed when one party submits an offer or order to buy goods for prompt shipment and the other party accepts either by a prompt promise to ship or by the prompt shipment of conforming goods. TEX. BUS. & COM. CODE § 2-206(1)(b). Plaintiffs allege that TSE and Showcase submitted purchase order forms for goods to Eastbay, which Eastbay then fulfilled by delivering the conforming goods, thus forming a valid contract. ECF No. 5 ¶¶ 19, 28. Eastbay tendered performance  by delivering conforming goods pursuant to the purchase orders. *See id.* ¶ 29*; Crop Prod. Servs., Inc. v. Vaculin*, No. 6:15-CV-00100, 2016 WL 3223323 (W.D. Tex. Feb. 16, 2016) (holding performance was tendered by Plaintiff when Plaintiff delivered the goods under the agreement). The breach occurred when TSE and Showcase allegedly failed to pay for the goods within 30 days of the invoice date, as required by the terms of the contracts. ECF Nos. 5 ECF No. 5 ¶ 30; ECF No.5-1 at 1, ECF No. 5-2 at 1; *see Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied) ("A breach occurs when a party fails to perform a duty required by the contract."). Plaintiff alleges that these failures to pay constitute a breach that has caused damages in the total amount of the unpaid invoices, $488,149.47. ECF No. 5 ¶ 31. These allegations, taken as true, make out a claim for breach of contract against TSE and Showcase.

### 2. *Breach of Contract on a Personal Guaranty Against Cardenas*

Plaintiffs also assert a claim for breach of contract on a personal guaranty against Defendant Cardenas. ECF No. 5 at 6–7. Like any contract, a guaranty agreement must be supported by consideration. *Hargis v. Radio Corp. of Am.*, 539 S.W.2d 230, 232 (Tex .Civ. App.—Austin 1976, no writ). Consideration for a guaranty agreement is usually either the sufferance of a detriment by the creditor or a benefit conferred on the primary debtor. *Id.* Here, Plaintiffs allege that, in exchange for Eastbay's extension of credit to TSE and Showcase, Cardenas agreed to personally guarantee the obligations of TSE and Showcase. *See* ECF No. 5-1 at 2; ECF No. 5-2 at 2. Accordingly, Plaintiff has sufficiently alleged the existence of a valid guaranty agreement.

Plaintiff alleges that it tendered performance under the Personal Guaranty by allowing TSE and Showcase to purchase goods on credit and delivering conforming goods. *See* ECF No. 5 ¶ 36. Plaintiffs further assert that TSE and Showcase's failure to make timely payments pursuant to the Agreements triggered Cardenas's obligation to pay their debts under the Personal Guaranty agreements. Specifically, the Personal Guaranty agreements Cardenas signed in connection with Eastbay's contracts with TSE and Showcase (the "Agreements") stated that, in the event of failure by TSE or Showcase to make any payment to Eastbay pursuant to the Agreements, Cardenas "personally guarantee[d] any payments owed to Eastbay by the [companies] and agree[d] to make all payments to Eastbay in the same manner as if he were the principal of the Agreement[s]." *See* ECF No. 5 ¶¶ 20, 38, ECF No. 5-1 at 3, ECF No. 5-2 at 3. Cardenas has failed to pay the outstanding invoices on behalf of either TSE or Showcase, thus breaching the Personal Guaranty agreements and causing Plaintiff damages in the amount of the outstanding invoices, $488,149.47. Accordingly, the Court concludes that Plaintiff has pled sufficient facts to support all elements of a breach of guaranty claim against Cardenas.

C.     **Damages**

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability.  But it does not establish the amount of damages." *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Damages awarded in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54(c). Usually, non-liquidated damages are proven at a hearing. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) for the general rule that non-liquidated damages in default judgment are not awarded without evidentiary hearing). However, where a mathematical calculation of unliquidated damages is possible with reference to adequately detailed affidavits, a hearing is not necessary. *Id.* The discretionary nature of whether to conduct a hearing is supported by the express language in the Federal Rules themselves.  *See* FED. R. CIV. P. 55(b)(2) (emphasis added) ("The court may conduct hearings . . . when, to enter or effectuate a judgment, it needs to: . . . (B) determine the amount of damages[.]").

Here, Plaintiff seeks a sum certain and thus the damages can be determined without a hearing. In addition, Plaintiff seeks the same amount and kinds of damages sought in the Amended Complaint. Plaintiff seeks $488,149.47, which is the sum of the alleged unpaid invoices. The Court finds this amount proper and, further, awards post-judgment interest and costs of court.

## CONCLUSION

Accordingly, Plaintiffs' Motion for Default Judgment (ECF No. 23) is **GRANTED**. Plaintiff is awarded $488,149.47 in damages. A separate judgment in favor of Plaintiff shall issue in accordance with Rule 58. Plaintiff is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, with supporting documentation, within fourteen days of the entry of the Judgment.  *See* Local Rule 54.

It is so **ORDERED**.

**SIGNED** this 1st day of November, 2021.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE